**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0003754
31-JAN-2017
08:07 AM**

NO. CAAP-13-0003754

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


TIMMY HYUN KYU AKAU, Petitioner-Appellant,
v.
STATE OF HAWAI'I, Respondent-Appellee


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1SD13-1-9)


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Reifurth and Ginoza, JJ.)

Over twenty-five years after his misdemeanor conviction for driving under the influence of intoxicating liquor became final, Petitioner-Appellant Timmy Hyun Kyu Akau (Akau) filed a petition for post-conviction relief pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 40 (2006). Akau sought to overturn his conviction, contending that he did not validly waive the right to counsel or the right to a jury trial, and that his privilege against self-incrimination had been violated because he testified at trial without being informed of his right not to testify. Because of Akau's delay in filing his petition, no transcripts of the proceedings held in Akau's case were available, as the court reporter's shorthand notes had been destroyed in accordance with the court's record retention policies.

The District Court of the First Circuit (District Court)[1] denied Akau's petition. Applying principles based on the doctrine of laches, the District Court concluded that Akau's "inordinate" twenty-five-year delay in filing his petition had "resulted in the unavailability of records[] and unusually handicap[ped] the State." The District Court further concluded that granting Akau's petition would "open the flood gates for similar petitions" that the State of Hawai'i (State) would be unable to respond to because the period to retain records had passed.

Akau appeals from the District Court's denial of his petition for post-conviction relief. We affirm.

BACKGROUND

I.

In 1987, after a bench trial, Akau was convicted of Driving Under the Influence of Intoxicating Liquor (DUI), in violation of Hawaii Revised Statutes (HRS) § 291-4 (1987). He was sentenced to a $150 fine, $5 Driver's Education fee, 14-hour Alcohol Abuse Rehabilitation Program class, and 90-day license suspension. Akau did not appeal his conviction or sentence.

On June 17, 2013, Akau filed an "HRPP Rule 40 Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody" (Petition). By this time, pursuant to the District Court's record retention policies, the court reporter's shorthand notes of proceedings held in Akau's DUI case had been destroyed, and therefore, no transcripts of any of the proceedings in Akau's case were available.[2]

The only portion of the District Court's records for Akau's DUI case that was still available was a District Court

---

[1] The Honorable Linda K.C. Luke presided.

[2] Before filing his Petition, Akau made a request for transcripts of proceedings held in his 1987 DUI case. By letter dated August 31, 2012, a District Court clerk informed Akau's counsel that "[t]he shorthand notes from which transcripts are produced has been destroyed" and that "in accordance with the retention schedule, shorthand notes for cases are destroyed after ten (10) years."

2

calendar. The court calendar indicates that on July 26, 1987, Akau was arrested and charged with DUI, in violation of HRS § 291-4.[3] On July 28, 1987, Akau appeared in District Court, Ewa Division, pleaded not guilty, and was referred to the Public Defender's Office. On December 23, 1987, Akau appeared for trial without counsel. He requested a continuance which was denied. After a bench trial, Akau was found guilty and sentenced.[4] His sentence did not include any jail time. A proof of compliance hearing was held on June 8, 1988, and a handwritten entry on the court calendar for that date states "no further action."

## II.

In his Petition, Akau sought to overturn his DUI conviction and asserted three grounds for relief: (1) he did not validly waive his right to counsel; (2) he did not validly waive his right to a jury trial; and (3) his privilege against self-incrimination had been violated because he testified at trial without knowing that he had a right not to testify.

In support of his Petition, Akau submitted an affidavit that was based on his "best recollections" of events that transpired in 1987. Among other things, Akau asserted that when

---

[3] Akau's DUI charge was at that time a full misdemeanor, and he therefore had the right to a jury trial.

[4] The calendar entries for July 28, 1987, and December 23, 1987, state as follows:

7/28/87:   DEFT PRES; PLEADED NOT GUILTY; REF TO PUB DEF -- CONT FOR TRIAL.

12/23/87:  DEFT NOT REP. BY P.D. PROSE & OFF. PRES -- (TRIAL HAD) FOUND GUILTY -- (DEFT'S REQ TO CONT -- DENIED) -- F150 + $5DE

(FINE PAID IN FULL) -- LS 30D ABS. (SURR TEMP LIC TO B.K.) -- LS 60D MAY DR TO/FR JOB & WORK PURP & DWI CLASSES -- DEFT MAY DR HOME FR CRT TODAY -- 14 HRS AARP -- REF TO DWI -- 4 PTS -- CONT. FOR PROOF.

See Record on Appeal, Dkt. 9, at 69. "LS 30D ABS." apparently refers to a 30-day absolute license suspension, and "LS 60D MAY DR TO/FR JOB & WORK PURP & DWI CLASSES" apparently refers to a 60-day license suspension during which Akau was permitted to drive for limited work-related purposes and to attend remedial classes. See HRS § 291-4(b)(1)(B) (1987).

3

he appeared in court on July 28, 1987, he "was referred to the Office of the Public Defender, and told to come back for trial on December 23, 1987." Akau asserted that he appeared for trial on December 23, 1987, without an attorney, requested a continuance which was denied, and then proceeded to trial, after which the District Court found him guilty of DUI and sentenced him for that offense. Akau maintained that he did not recall ever being informed that he had a right to an attorney, that he had a right to a jury trial, or that he had a right to appeal his conviction, and that had he known of these rights, he would have invoked them.

The District Court held a hearing on Akau's Petition. During the hearing, Akau testified that he was a resident of California, and he indicated that he had been employed as a correctional officer for twelve years. In recalling his DUI case, Akau testified that at his first appearance, the District Court informed him that he would be appointed an attorney if he could not afford one, and he interpreted this remark to mean that an attorney would be present to assist him on the December 23, 1987, trial date. Akau testified that he was not given an address or phone number to contact an attorney, so he assumed that his attorney would be present at trial without any further action on his part. Akau stated that when no lawyer appeared to represent him on the day of trial, he requested a continuance to obtain a lawyer, but his request was denied.

In explaining what had prompted him to file his Petition, Akau testified that he first investigated his rights after he was denied a renewal of his California driver's license in 2010. Akau moved to California in 2001 and obtained a driver's license without any problem. However, Akau claimed that when he attempted to renew his California license in 2010, his renewal was denied, and he was informed that there was a block on his license. As a result, he hired an attorney to investigate and was informed that his 1987 DUI conviction was the source of the block on his license, which led him to file his Petition.

4

III.

On September 11, 2013, the District Court denied Akau's Petition and issued its "Findings of Fact, Conclusions of Law, and Order" (Order Denying Petition). Relying in part on principles from the doctrine of laches, the District Court concluded:

> 10. The passage of twenty five (25) years between Petitioner's trial in 1987 and his Petition filed in June, 2013, is an inordinate amount of time leading to the nonexistence of Court records.
>
> 11. The Court retains records for ten (10) years. It is inequitable to grant the Petition because the passage of twenty-five (25) years has resulted in the unavailability of records, and unusually handicaps the State in meeting its burden and preparing a response to the Petition.
>
> 12. To grant the Petition would open the flood gates for similar petitions that would put the State in the position of being unable to respond to a petition that was brought after the period to retain records has passed.

The District Court further concluded that Akau's failure to obtain counsel during the five months between his referral to the Public Defender's Office and the trial constituted a "forfeiture" of his right to counsel and to a jury trial, and that the "totality of the circumstances weigh[ed] in favor of denying the Petition."

DISCUSSION

I.

Akau waited over twenty-five years to challenge his DUI conviction. As a result of this extraordinary delay, no transcripts of any of the proceedings in Akau's DUI case, including the transcript of his trial, were available. The delay significantly prejudiced the State's ability to respond to and controvert Akau's claims that his DUI conviction had been obtained in violation of his rights.

Under the circumstances of this case, and based on the doctrine of laches, we conclude that the District Court properly

5

denied Akau's Petition. The Hawai'i Supreme Court has described the doctrine of laches as follows:

> The doctrine of laches reflects the equitable maxim that "equity aids the vigilant, not those who slumber on their rights." Where applicable, it acts to bar a court from considering an equitable action such as for cancellation because of a perception that it is more equitable to defendants and important to society to promote claimant diligence, discourage delay and prevent the enforcement of stale claims.
>
> There are two components to laches, both of which must exist before the doctrine will apply. First, there must have been a delay by the plaintiff in bringing his claim, and that delay must have been unreasonable under the circumstances. Delay is reasonable if the claim was brought without undue delay after plaintiff knew of the wrong or knew of facts and circumstances sufficient to impute such knowledge to him. Second, that delay must have resulted in prejudice to defendant. Common but by no means exclusive examples of such prejudice are loss of evidence with which to contest plaintiff's claims, including the fading memories or deaths of material witnesses, changes in the value of the subject matter, changes in defendant's position, and intervening rights of third parties.

Adair v. Hustace, 64 Haw. 314, 320-21, 640 P.2d 294, 300 (1982) (citations and footnote omitted).

Courts from other jurisdictions have applied the doctrine of laches in denying petitions for post-conviction relief. E.g., Lile v. State, 671 N.E.2d 1190, 1194-96 (Ind. Ct. App. 1996); Paxton v. State, 903 P.2d 325, 327-28 (Okla. Crim. App. 1995); Terry v. Enomoto, 723 F.2d 697, 700 (9th Cir. 1984); McCray v. State, 699 So.2d 1366, 1368 (Fla. 1997). The doctrine has been applied to bar petitions for writs of error coram nobis, which, like Akau's Petition, seek to invalidate convictions after the sentences imposed have already been fully served by the petitioners. See Telink, Inc. v. United States, 24 F.3d 42, 45-48 (9th Cir. 1994); Jones v. State, 126 A.3d 1162 (Md. 2015). Application of the doctrine of laches in appropriate circumstances is consistent with the recognition of the importance of finality in our criminal justice system:

> Without finality, the criminal law is deprived of much of its deterrent effect. The fact that life and liberty are at stake in criminal prosecutions shows only that conventional notions of finality should not have as *much* place in criminal as in civil litigation, not that they should have

*none.* If a criminal judgment is ever to be final, the notion of legality must at some point include the assignment of final competence to determine legality.

Teague v. Lane, 489 U.S. 288, 309 (1989) (internal quotation marks, brackets, and citations omitted).

II.

There are two requirements for applying the doctrine of laches to Akau's Petition: (1) unreasonable delay or lack of diligence by Akau in seeking relief; and (2) prejudice to the State. See Adair, 64 Haw. at 320-21, 640 P.2d at 300; McCray, 699 So.2d at 1368; Jones, 126 A.3d at 1182 ("[F]or purposes of determining whether laches bars an individual's ability to seek coram nobis relief, prejudice involves not only the State's ability to defend against the coram nobis petition, but also the State's ability to reprosecute."). Both conditions for applying the doctrine of laches have been satisfied in this case.

As noted, Akau waited over twenty-five years to file his Petition. The record shows that this inordinate delay was unreasonable and reflects a lack of diligence on Akau's part. Akau admitted that at his initial appearance in District Court, he was told that if he could not afford an attorney, one would be appointed for him, and that he was referred to the Public Defender's Office. Akau also testified at the hearing on his Petition that when no lawyer appeared to represent him on the day of trial, he requested a continuance to obtain a lawyer. Thus, the record indicates that Akau was aware that he had the right to representation by counsel when his case was tried, and that he either had knowledge of his alleged wrongful deprivation of counsel or knew of facts and circumstances sufficient to impute such knowledge to him. See Adair, 64 Haw. at 320-21, 640 P.2d at 300; Jones, 126 A.3d at 1174 ("[F]or purposes of the doctrine of laches, delay begins when a petitioner knew or should have known of the facts underlying the alleged error[.]"). Akau's prolonged failure to thereafter investigate the alleged deficiencies in his prosecution and seek relief was unreasonable.

In addition, Akau's testimony at the hearing on his Petition indicated that he had been a correctional officer for twelve years.[5]  Given Akau's employment in the criminal justice system, it is difficult to believe that he would not be exposed to such basic principles as the right to counsel and to a jury trial.  See Lile, 671 N.E.2d at 1194 (noting that repeated contacts with the criminal justice system is a factor that can be considered to infer that the petitioner had knowledge of post-conviction remedies).  Moreover, Akau's explanation for his interest in seeking relief is odd.  Akau claims that he was prompted to file the Petition after his attempt to renew his California driver's license in 2010 was blocked by his 1987 Hawai'i DUI conviction.  However, Akau's license was only suspended for 90 days as the result of his 1987 Hawai'i DUI conviction and he was able to obtain a California driver's license when he moved there in 2001, so it is unclear how or why his 1987 DUI conviction would block his license renewal.

Akau's twenty-five-year delay in filing his Petition has resulted in prejudice to the State due to the "loss of evidence with which to contest" Akau's claims.  See Adair, 64 Haw. at 321, 640 P.2d at 300; Terry, 723 F.2d at 700; Jones, 126 A.3d at 1182.  As a result of the delay, the court reporter's shorthand notes of the proceedings in Akau's case have been destroyed.  Accordingly, there are no transcripts of the proceedings available to show what happened.

---

[5] Akau testified as follows:

    Q  What do you do for a living, sir?

    A  I'm a correctional officer.

    Q  Correction officer?

    A  Yes, sir.

    Q  So you're -- as part of your -- what were your -- what were your -- uh, how long you been a correction officer?

    A  Now going on twelve.

III.

Akau relies on Wong v. Among, 52 Haw. 420, 477 P.2d 630 (1970), a 1970 decision of the Hawai'i Supreme Court. Wong was convicted of various offenses in 1953. In 1969, while still an incarcerated prisoner, Wong filed a writ of habeas corpus, challenging his 1953 convictions on the principal ground that he was denied the right to assistance of counsel in entering his guilty pleas. Wong, 52 Haw. at 421-22, 477 P.2d at 632. The supreme court appointed a special master to hold evidentiary hearings on the writ, and the special master found, among other things, that Wong was not advised of nor understood his right to counsel; that Wong was without counsel and did not understand what was happening when he pleaded guilty; that the court reporter's shorthand notebooks relating to the proceedings against Wong had been destroyed in 1958 pursuant to a statutory records disposition authorization; and that the available portion of the court record was silent on whether Wong had validly waived his right to counsel when he pleaded guilty. Id. at 422-23, 477 P.2d at 632-33. The supreme court held that where the record is silent, the State has the burden of proving that the defendant validly waived his or her right to counsel, and that the State had failed to carry its burden. Id. at 424-25, 477 P.2d 633-34. The supreme court vacated Wong's convictions. Id. at 426, 477 P.2d at 634.

We conclude that Wong is distinguishable and does not control the outcome of this case. Most significantly, Wong did not address or decide the question of whether the doctrine of laches could be applied to deny a petition for post-conviction relief. Accordingly, Wong does not preclude our application of the laches doctrine to Akau's Petition. See State v. Wheeler, 121 Hawai'i 383, 399, 219 P.3d 1170, 1186 (2009) (holding that "for purposes of *stare decisis*, the holdings of [prior supreme court decisions] are limited to the issues that were actually decided by the court"). Akau's case is further distinguishable from Wong because unlike Wong, who sought post-conviction relief

while he was still incarcerated and serving his sentence, Akau was not sentenced to imprisonment and his sentence had been fully served and completed twenty-five years before he filed his Petition. The interests in finality of criminal convictions weigh more heavily when a defendant's liberty is not at stake.

Under the circumstances of this case, where Akau unreasonably delayed the filing of his Petition, the delay prejudiced the State's ability to contest his claims, and Akau's liberty was not at stake, we conclude that Akau's Petition was barred by the doctrine of laches.[6]

CONCLUSION

Based on the foregoing, we affirm the District Court's Order Denying Petition.

DATED: Honolulu, Hawai'i, January 31, 2017.

On the briefs:

Brian A. Costa
(Costa & DeLacy, LLLC)
for Petitioner-Appellant

Brian R. Vincent
Deputy Prosecuting Attorney
City and County of Honolulu
for Respondent-Appellee

*Craig H. Nakamura*

Chief Judge

*Lawrence M Reifurth*

Associate Judge

Associate Judge

---

[6] Akau does not contend that the District Court's record retention policies were improper or unreasonable. Precluding the application of the doctrine of laches to petitions like Akau's would open the door to challenges of all types of convictions long after the sentences imposed had been fully served and pertinent court records had been appropriately destroyed and rendered unavailable.

10